This was an action to recover of the defendant as ex'r. of Henry Savage, double the par value of thirty-two shares of stock owned by the intestate in "The President and Directors of the Commercial Bank of Wilmington" under the provisions of the charter of said bank, tried before McKoy, Judge, at January Term, 1875, of New Hanover Superior Court. By direction of the Court the issues of law arising upon the demurers were reserved.
By agreement of counsel, the only issue of fact submitted to the jury was this:
Was "the President and Directors of the Commercial Bank of Wilmington" at the time of the commencement of this suit, to-wit: on the 23d day of May, 1871, insolvent and unable to pay the plaintiff the balance of his judgment against the said bank? *Page 334 
It was in evidence that the sheriff on the 13th day of May, 1870, made on the execution on the judgment of this plaintiff against the said bank the sum of $76.05, and on the 2d day of June, 1870, the further sum of $90.67, and for the balance of said judgment the executions are returned unsatisfied, and so remain unsatisfied to this day.
It was further in evidence, that while the executions were in the hands of the sheriff he applied to the president of the bank to show him property to levy on, and the president informed him, that he had already surrendered all the property of the bank, and that he had no other property of the bank than that already surrendered.
It was further in evidence, that the plaintiff had another claim of $430 due him as administrator, and after the returns of the executions and before the institution of this suit, he demanded of the president of the bank, a settlement of that deposit account, and he was informed by the president that he had nothing to pay with. It was further in evidence that at the time of the institution of this suit, to-wit: the 23d day of May, 1871, the said bank did have in its possession seventy bonds of the State of North Carolina, each of the par value of $1,000 with coupons attached which were of the par value of about $20,000 making the aggregate par value of the bonds and coupons about $90,000. It was further in evidence that the said bonds were of the following tenor:
No. — CONFEDERATE STATES OF AMERICA, $1,000.
AN ACT to secure the completion of the Wilmington, Charlotte } and Rutherford Railroad, Feb. 16, 1861, ch. 142. }
It is hereby certified that the State of North Carolina justly owes (A. B.) or bearer, one thousand dollars, redeemable in good and lawful money ofThe Confederate States, at the office of the Treasurer of the State of North Carolina, in the City of Raleigh, on the 1st day of July, 1892, with interest at the rate of six per cent. per annum, payable half-yearly at the said office on the 1st days of January and July in each year from *Page 335 
the date of this bond and until the principal be paid, on surrendering the proper coupons, hereunto annexed.
In witness whereof the Governor of said State, in virtue of power conferred by law, hath signed this bond and caused the great seal of the State to be hereto affixed, and the Treasurer hath countersigned the same at the seat of government of said State, this 1st day of July, 1862.
[L S.] Z. B. VANCE, Governor. Countersigned: JOH'N [JOHN] WORTH, Public Treasurer.
It was further in evidence that the Wilmington, Charlotte and Rutherford Railroad Company was justly indebted to the bank to an amount equal to the par value of said bonds for money before that time lent to the said Railroad Company, and for which amount the said bank held evidences of the debt, which were good and available, and for these evidences of debt the said bank received the said bonds and surrendered the said evidences of debt. It was further in evidence that at the time of the commencement of this suit the said bonds were worth thirty-five or forty cents in the dollar. It was further in evidence that one Solomon Bear in the Spring of 1871, purchased in Wilmington some of these bonds at thirty-five cents in the dollar and very shortly afterwards went to the City of New York and tried to sell them and could not get an offer for them, but the holders of some of these bonds offered to sell them to him at ten cents in the dollar.
It was further in evidence that the said bank at the time of the commencement of this action held notes and bills of exchange due to the bank and had since that time redeemed about $40,000 of its issue at thirty cents in the dollar.
The plaintiff insisted that his right to payment of his judgment is paramount to the right of the stockholders to have the assets exhausted, and is not bound to wait until the bank can *Page 336 
bring them into a condition to be advantageously turned into money.
The plaintiff requested the Court to charge the jury that if they believe from the evidence that the said executions on the judgment in favor of the plaintiff against the bank have been returned unsatisfied, and the sheriff, while the executions were in his hands, applied to the president of the bank to show him property to levy on, and that he was informed by the president that the bank had no other property than what had been already surrendered, even though they may believe that the president did have in its possession at the time of the commencement of this suit and now holds the bonds, (in evidence), and had at that time the bills of exchange and promissory notes in evidence, that the plaintiff was not bound to wait until the bank can bring its assets into a condition to be advantageously turned into money, but was entitled to immediate payment and they should find for the plaintiff.
The Court refused to give the charge in the language requested by plaintiff, and plaintiff excepted.
The Court charged the jury that in the language of the charter of the bank, viz: "In case of insolvency or ultimate inability of the bank to pay, the individual stockholders shall be held liable to creditors in sums double the amount of the stock by them respectively held," the liability of the stockholders was a secondary liability, contingent upon the insolvency or ultimate inability of the bank to pay. That the jury was to take into consideration all the evidence concerning the bonds, and other assets, the circumstances under which the bonds were issued, together with all the other assets, and all the proof as to their value, and from the whole evidence say whether at the issuing of the summons in the case (the date of the summons being furnished the jury) the bank was insolvent. That a creditor was only required to wait a reasonable time to have the assets made available or to have the assets exhausted. That in determining the question of insolvency, the Court charged, that in the language of the charter, it meant insolvent *Page 337 
at the date of the summons or that it would be ultimately unable to pay the debt of the plaintiff. That ultimate inability (in the sense in which it was to be taken) meant within a reasonable time. Creditors were not compelled to wait for distribution of the assets. Yet before a creditor could recover from the individual stockholder it must be first ascertained that the bank is insolvent or ultimately unable to pay the debt. If at the time the action was brought there were not assets of the bank that could be subjected to the payment of plaintiff's debt, then he is entitled to recover and they should so find. But if at the time, there were assets of bank that could be subjected to the payment, sufficient to satisfy the debt, then there was not that inability on the part of the bank to pay and they must find for the plaintiff.
The plaintiff excepted — verdict for the defendant; plaintiff appealed; notice of appeal waived.
It is held in Von Glahn v. Harris, at this term that all of the creditors of the bank are necessary parties plaintiff, and must be made plaintiffs directly, or by construction, in an action in the names of one or more of the creditors, in behalf of themselves and all of the other creditors who may come in and take part in the proceedings, prove their debts, c.
That point of law was reserved by his Honor and certain issues submitted to a jury. The case goes on one of the points of law. So his ruling upon the issues are superceded. [superseded]
No error in the judgment.
PER CURIAM. Judgment affirmed. *Page 338